**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

WILLIAM JUNIOR ROCK,

        Petitioner,

vs.

UNITED STATES OF AMERICA,

        Respondent.

No. C 11-4078-MWB
(No. CR 09-4042)

**MEMORANDUM OPINION AND ORDER REGARDING PETITIONER'S SECTION 2255 MOTION**

———————————

**TABLE OF CONTENTS**

I.  *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A.  The Criminal Proceedings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B.  The § 2255 Motion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.  *LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *A.  Standards For § 2255 Relief* . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *B.  Procedural Matters* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        *1.  Case or controversy* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        *2.  Preliminary matters* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        *3.  Procedural default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    *C.  Ineffective Assistance Of Counsel* . . . . . . . . . . . . . . . . . . . . . . . 9
        *1.  Applicable standards* . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        *2.  Failure to request jury instructions* . . . . . . . . . . . . . . . . 13
        *3.  Failure to use transcripts to impeach* . . . . . . . . . . . . . . 19
        *4.  Failure to argue lack of notice* . . . . . . . . . . . . . . . . . . . 21
    *D.  Certificate Of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . 22

III.  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## I. INTRODUCTION

This case is before me on petitioner William Junior Rock's *Pro Se* Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Civ. docket no. 1), filed on September 6, 2011. Rock claims that the attorney who represented him at the trial level provided him with ineffective assistance of counsel. The respondent denies that Rock is entitled to any relief on his claims.

### A. The Criminal Proceedings

On August 19, 2009, Rock was charged by a one-count Indictment (Crim. docket no. 2) with failing to register pursuant to the Sex Offender Registration and Notification Act ("SORNA"). *See* Crim. docket no. 2. On March 30, 2010, Rock appeared in front of then Chief United States Magistrate Judge Paul A. Zoss to plead not guilty to the Indictment. *See* Crim. docket no. 5.

On July 29, 2010, Rock proceeded to trial. *See* Crim. docket no. 51. On that same day, the jury returned a verdict of guilty on count one of the Indictment. *See* Crim. docket no. 53. Rock, by counsel, filed a Motion For New Trial/Renewed Motion For Judgment Of Acquittal (Crim. docket no. 56), on August 6, 2010. The Government filed a Response (Crim. docket no. 60), on August 13, 2010. I denied Rock's Motion For New Trial/Renewed Motion For Judgment Of Acquittal on August 14, 2010. *See* Crim. docket no. 65.

Rock, by counsel, filed a Motion For Variance From Advisory Sentencing Guidelines (Crim. docket no. 61), on August 19, 2010, based on Rock's then current incarceration, the nature and circumstances of Rock's offenses and the reduced risk of danger to the community. Rock appeared before me on August 26, 2010, for a sentencing

2

hearing. *See* Crim. docket no. 66. I granted Rock's motion for a downward variance and sentenced him to 30 months imprisonment. *See* Crim. docket nos. 66 and 67.

Rock, by counsel, filed a Notice of Appeal (Crim. docket no. 69), to the United States Court of Appeals for the Eighth Circuit on September 10, 2010. On March 11, 2011, the Eighth Circuit Court of Appeals affirmed Rock's sentence. *See* Crim. docket no. 82.

## B. The § 2255 Motion

On September 6, 2011, Rock filed a *Pro Se* Motion Under § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Civ. docket no. 1). On September 7, 2011, Rock filed a *Pro Se* Supplement (Civ. docket no. 3), to his § 2255 Motion, providing an affidavit in support of his motion. The Respondent filed an Answer (Civ. docket no. 4), on September 30, 2011. On March 29, 2012, Rock, by counsel, filed an Opening Brief (Civ. docket no. 8). The Respondent filed a Government's Response and Memorandum In Support Of Government's Response To Defendant's Motion (Civ. docket no. 13), on May 30, 2010. Rock, by counsel, filed a Reply To Government's Responsive Brief (Civ. docket no. 14), on June 29, 2010.

## II. LEGAL ANALYSIS

### A. Standards For § 2255 Relief

Section 2255 of Title 28 of the United States Code provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such

3

> sentence, or [3] that the sentence was in excess of the
> maximum authorized by law, or [4] is otherwise subject to
> collateral attack, may move the court which imposed the
> sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *Watson v. United States,* 493 F.3d 960, 963 (8th Cir. 2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may seek post conviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."); *Bear Stops v. United States*, 339 F.3d 777, 781 (8th Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). Thus, a motion pursuant to § 2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal Habeas corpus.'" *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)); *accord Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (quoting *Wilson*).

One "well established principle" of § 2255 law is that "'[i]ssues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28 U.S.C. § 2255.'" *Theus v. United States*, 611 F.3d 441, 449 (8th Cir. 2010) (quoting *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001)); *Bear Stops*, 339 F.3d at 780. One exception to that principle arises when there is a "miscarriage of justice," although the Eighth Circuit Court of Appeals has "recognized such an exception only when petitioners have produced convincing new evidence of actual innocence," and the Supreme Court has not extended the exception beyond situations involving actual innocence. *Wiley*, 245 F.3d at 752 (citing cases, and also noting that "the Court has emphasized the narrowness of the exception and has expressed its desire that it remain 'rare' and available only in the 'extraordinary case.'" (citations omitted)). Just as § 2255 may not be used to

4

relitigate issues raised and decided on direct appeal, it also ordinarily "is not available to correct errors which could have been raised at trial or on direct appeal." *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (*per curiam*). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in Habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal quotations and citations omitted).

"Cause and prejudice" to resuscitate a procedurally defaulted claim may include ineffective assistance of counsel, as defined by the *Strickland* test, discussed below. *Theus*, 611 F.3d at 449. Indeed, *Strickland* claims are not procedurally defaulted when brought for the first time pursuant to § 2255, because of the advantages of that form of proceeding for hearing such claims. *Massaro v. United States*, 538 U.S. 500 (2003). Otherwise, "[t]he Supreme Court recognized in *Bousley* that 'a claim that "is so novel that its legal basis is not reasonably available to counsel" *may* constitute cause for a procedural default.'" *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (quoting *Bousley*, 523 U.S. at 622, with emphasis added, in turn quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). The "actual innocence" that may overcome either procedural default or allow relitigation of a claim that was raised and rejected on direct appeal is a demonstration "'that, in light of all the evidence, it is more likely than not that no reasonable juror would Have convicted [the petitioner].'" *Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) (quoting *Bousley*, 523 U.S. at 623); *see also House v. Bell*, 547 U.S. 518, 536-37 (2006). "'This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a [conviction on the challenged offense].'" *Id.* (quoting *McNeal v. United States*, 249 F.3d 747, 749-50 (8th Cir. 2001)).

With these standards in mind, I turn to analysis of Rock's claims for § 2255 relief.

5

## B.  Procedural Matters

### 1.    Case or controversy

Neither party raised the issue of whether Rock's § 2255 motion is moot.  However, because "judicial power depends upon the existence of a case or controversy," the circumstances of this case require the issue of mootness to be resolved prior to discussing the substantive merits of Rock's motion.  *See DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974).

Rock filed his § 2255 motion on September 6, 2011.  *See* Civ. docket no. 1.  The record indicates that Rock is no longer in federal custody.  On September 30, 2011, Rock was released from prison and ordered to reside in a halfway house.  *See* Crim. docket no. 92.  On May 15, 2012, I revoked Rock's supervised release and ordered him imprisoned for four months.  *See* Crim. docket no. 97.  By my calculation, Rock would have been released from imprisonment and from all supervised release prior to disposition of this § 2255 motion.

"[The] case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate. . . The parties must continue to have a 'personal stake in the outcome' of the lawsuit."  *Spencer v. Kemna*, 523 U.S.1, 7 (1998) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 478 (1990)).  "[T]hroughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'"  *Id.*  "An incarcerated convict's (or a parolee's) challenge to the validity of his conviction always satisfies the case-or-controversy requirement, because the incarceration (or the restriction imposed by the terms of the parole) constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction."  *Id.*  "Once the convict's sentence has expired, however, some concrete and continuing injury other than the now-ended

incarceration or parole-some 'collateral consequence' of the conviction-must exist if the suit is to be maintained." *Id.* The Supreme Court has been "willing to presume that a wrongful criminal conviction has continuing collateral consequences." *Id.* at 8, (citing *Sibron v. New York*, 392 U.S. 40, 55-56 (1968)); *See also Carafas v. LaVallee,* 391 U.S. 234, 238-39 (1968) (once attached, federal jurisdiction is not defeated by release of habeas petitioner before habeas proceedings challenging conviction are completed).

The United States Court of Appeals for the Eighth Circuit has followed this reasoning on several occasions. *See Nyguen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (citing *Clemmons v. United States,* 721 F.2d 235, 237 n.3 (8th Cir. 1983)). Because Rock was incarcerated at the time he filed this § 2255 motion, and is challenging his conviction, not merely his sentence, and because his federal conviction could have collateral consequences in the future, I find that the issues raised in his § 2255 motion are not moot. *See Nyguen*, at 703 (case not moot because the federal conviction could have collateral consequences in the future, and the movant was still in federal custody when he instituted the § 2255 proceedings).

### 2. *Preliminary matters*

"A district court does not err in dismissing a movant's section 2255 motion without a hearing if (1) the movant's 'allegations, accepted as true, would not entitle' the movant to relief, or '(2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Buster v. United States*, 447 F.3d 1130, 1132 (8th Cir. 2006) (quoting *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003), with citation and quotation marks omitted); *see* 28 U.S.C. § 2255. On the other hand, an evidentiary hearing is necessary where "'the court is presented with some reason to question the evidence's credibility.'" *Kingsberry v. United States*, 202 F.3d 1030, 1033 (8th Cir. 2000) (quoting 1 Liebman and Hertz,

7

Federal Habeas Corpus Practice and Procedure § 19.5, at 723 (3rd ed. 1998); *id.* at 1033 n.6 (also quoting 28 U.S.C. § 2254, Rule 7 advisory committee's note (1994), made applicable to § 2255 by reference, as stating, "When the issue is one of credibility, resolution on the basis of affidavits can rarely be conclusive, but that is not to say they may not be helpful."); *see also Koskela v. United States*, 235 F.3d 1148, 1149 (8th Cir. 2001) (holding that the district court abused its discretion in not holding an evidentiary hearing on a § 2255 claim of failure to call alibi witnesses, because the record before the district court "contained sharply conflicting evidence"). Even though ineffective assistance of counsel claims may be raised on a § 2255 motion, because of the advantages of that form of proceeding for hearing such claims, *see Massaro*, 538 U.S. at 500, that does not mean that an evidentiary hearing is required for every ineffective assistance claim presented in a § 2255 motion. In this case, I conclude that no evidentiary hearing is required on any issue because the record conclusively shows that Rock's allegations either cannot be accepted as true, because they are contradicted by the record, or because, even if Rock's allegations were accepted as true, they would not entitle him to relief. *Buster*, 447 F.3d at 1132. "No hearing is required where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Sinisterra v. United States*, 600 F.3d 900, 906 (8th Cir. 2010) (citing *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007) (internal quotations and citation omitted)).

### 3. *Procedural default*

Section 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice, or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice. *See Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993). "[C]ause and prejudice" to overcome such default may include "ineffective assistance of counsel." *See Becht v.*

8

*United States*, 403 F.3d 541, 545 (8th Cir. 2005). The Eighth Circuit Court of Appeals has expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings."). To the extent that I can construe Rock's claims as claims of ineffective assistance of counsel, I will consider them on the merits.

## C. Ineffective Assistance Of Counsel

### 1. Applicable standards

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. AMEND. VI. Thus, a criminal defendant is constitutionally entitled to the effective assistance of counsel both at trial and on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003); *see also Steele v United States,* 518 F.3d 986, 988 (8th Cir. 2008). The Eighth Circuit Court of Appeals has recognized that, if a defendant was denied the effective assistance of counsel guaranteed by the Sixth Amendment, "then his sentence was imposed 'in violation of the Constitution,' . . . and he is entitled to relief" pursuant to § 2255(a). *King v. United States*, 595 F.3d 844, 852 (8th Cir. 2010). Both the Supreme Court and the Eighth Circuit Court of Appeals have expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because such a claim often involves facts outside of the original record. *See Massaro*, 538 U.S. at 504-05 (2003); *United States v. Hughes*, 330 F.3d

9

1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings.").

The Supreme Court has reiterated that "'the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation . . . [but] simply to ensure that criminal defendants receive a fair trial.'" *Cullen v. Pinholster*, ___ U.S. ___, ___, 131 S. Ct. 1388, 1403 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). That being the case, "'[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Id.* (quoting *Strickland*, 466 U.S. at 686, with emphasis added). To assess counsel's performance against this benchmark, the Supreme Court developed in *Strickland* a two-pronged test requiring the petitioner to show "both deficient performance by counsel and prejudice." *See Strickland*, 466 U.S. at 687-88, 697; *see also Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct. 1411, 1419 (2009). "'Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.'" *Gianakos v. United States*, 560 F.3d 817, 821 (8th Cir. 2009) (quoting *Strickland*, 466 U.S. at 687).

As to the deficient performance prong, "The Court acknowledged [in *Strickland*] that '[t]here are countless ways to provide effective assistance in any given case,' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" *Pinholster*, ___ U.S. at ___, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at 689). Moreover,

> Recognizing the "tempt[ation] for a defendant to second-guess counsel's assistance after conviction or adverse sentence," [*Strickland*, 466 U.S. at 689], the Court established that counsel should be "strongly presumed to have rendered

10

adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *id.,* at 690, 104 S. Ct. 2052. To overcome that presumption, a defendant must show that counsel failed to act "reasonabl[y] considering all the circumstances." *Id.,* at 688, 104 S. Ct. 2052. The Court cautioned that "[t]he availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges." *Id.,* at 690, 104 S. Ct. 2052.

*Pinholster,* ___ U.S. at ___, 131 S. Ct. at 1403. To put it another way,

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [*Strickland,*] 466 U.S. at 688, 104 S. Ct. 2052. . . . The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.,* at 687, 104 S. Ct. 2052.

*Harrington v. Richter,* ___ U.S. ___, ___, 131 S. Ct. 770, 787 (2011); *Premo v. Moore,* ___ U.S. ___, 131 S. Ct. 733, 739 (2011) (quoting *Richter*). There are two substantial impediments to making the required showing of deficient performance. First, "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *United States v. Rice,* 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland,* 466 U.S. at 690). Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland,* 466 U.S. at 689); *Davis v. Norris,* 423 F.3d 868, 877 (8th Cir. 2005) ("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance."). Also, the court "'must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."'" *King,* 595 F.3d

at 852-53 (quoting *Ruff v. Armontrout*, 77 F.3d 265, 268 (8th Cir. 1996), in turn quoting *Strickland*, 466 U.S. at 690).

The second prong of the *Strickland* analysis requires the challenger to prove prejudice. *Pinholster*, ___ U.S. at ___, 131 S. Ct. at 1403 (citing *Strickland*, 466 U.S. at 691-92). "'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Gianakos*, 560 F.3d at 821 (quoting *Strickland*, 466 U.S. at 691). As the Supreme Court has explained,

> "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." [*Strickland*, 466 U.S.] at 694, 104 S. Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Ibid*. That requires a "substantial," not just "conceivable," likelihood of a different result. *Richter*, 562 U.S., at ----, 131 S. Ct., at 791.

*Pinholster*, ___ U.S. at ___, 131 S. Ct. at 1403. However, even where the petitioner "suffered prejudice from his lawyer's error," he is not entitled to § 2255 relief unless the lawyer's error was also the result of conduct that was professionally unreasonable at the time. *King*, 595 F.3d at 852-53.

The two prongs of the "ineffective assistance" analysis are usually described as sequential. Thus, if the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003). On the other hand, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999) (citing *Pryor v. Norris*, 103 F.3d 710 (8th Cir. 1997)); *accord Gianakos*, 560 F.3d at 821 ("'We need not

12

inquire into the effectiveness of counsel, however, if we determine that no prejudice resulted from counsel's alleged deficiencies.' *Hoon v. Iowa*, 313 F.3d 1058, 1061 (8th Cir. 2002) (citing *Strickland*, 466 U.S. at 697, 104 S. Ct. 2052).").

### 2. *Failure to request jury instructions*

Rock alleges, by counsel, that his trial counsel provided ineffective assistance by failing to request a jury instruction based on final SORNA guidelines' interpretation of "residence" and "habitually resides." Brief at 10. Respondent asserts that the instruction that Rock believes his trial counsel should have requested was actually before the Court when it compiled its instructions, and that the Court decided not to include the requested instruction. Response at 7.

Rock argues that SORNA itself does not clarify what "residence" means in the context of an arguably transient or homeless individual, or how that status affects an individual's registration requirements pursuant to SORNA. Brief at 10. In order to address this issue, Rock claims, by counsel, that his trial counsel should have requested a jury instruction that included the expanded definition of "habitually lives" and "residence" found in the SORNA guidelines. Brief at 11. The guidelines provide in pertinent part:

> "'Habitually lives' accordingly should be understood to include places in which the sex offender lives with some regularity, and with reference to where the sex offender actually lives, not just in terms of what he would choose to characterize as his home address or place of residence for self-interested reasons. The specific interpretation of this element of "residence" these Guidelines adopt is that a sex offender habitually lives in the relevant sense in any place in which the sex offender lives for at least 30 days. Hence, a sex offender resides in a jurisdiction for purposes of SORNA if the sex offender has a

> home in the jurisdiction, or if the sex offender lives in the
> jurisdiction for at least 30 days."

National Guidelines for Sex Offender Registration and Notification, 73 Fed.Reg 38,030, 38055 (July 2, 2008). Rock asserts that this addition to the jury instructions would have been appropriate because there was no proof that Rock ever established a "residence" in Sioux City, Iowa, only that he stayed intermittently at a local "homeless shelter." Brief at 11.

Respondent argues that Rock's claim that the jury should have been given a broader definition of "habitually resides" and "residence" is invalid because Rock admitted that he had a duty to register in the State of Iowa. Response at 7. The respondent also asserts that the expanded definition was before the Court when it compiled its instructions and the Court chose not to include the expanded language. Response at 7. Therefore, respondent asserts, any specific request by counsel to include the language would not have been granted and would not have made a difference in the final instructions. Response at 7. Finally, the respondent argues, the SORNA Guidelines themselves acknowledge that they do not mean that a sex offender may delay registration for 30 days, but is still required to register within 3 days of establishing residency, which Rock had done in Sioux City, Iowa. Response at 8.

SORNA requires "those convicted of certain sex crimes to provide state governments with (and to update) information, such as names and current addresses, for inclusion on state and federal sex offender registries." *United States v. Knutson*, 680 F.3d 1021, 1022 (8th Cir. 2012) (per curiam) (citing *Reynolds v. United States*, 132 S.Ct. 975, 978-79 (2012). "Under SORNA, any person who (1) 'is required to register under [SORNA],' (2) 'knowingly travels in interstate or foreign commerce,' and (3) 'knowingly fails to register or update a registration as required by [SORNA]' is guilty of a crime

14

punishable by fine and imprisonment for up to ten years." *Id*. (citing 18 U.S.C. §
2250(a)); *see also* 42 U.S.C. § 16913 (creating the registration requirement). Pursuant to
SORNA, "[a] sex offender shall register, and keep the registration current, in each
jurisdiction where the offender resides, where the offender is an employee, and where the
offender is a student." 42 U.S.C. § 16913(a). SORNA requires an individual to keep
their registration current, by, "not later than 3 business days after each change of name,
residence, employment, or student status, appear in person in at least 1 jurisdiction
involved pursuant to subsection (a) of this section and inform that jurisdiction of all
changes in the information required for that offender in the sex offender registry." 42
U. S. C. § 16913(c). "SORNA explains that an individual 'resides' at a location, for
purposes of that statute, if that location is 'the individual's home or other place where the
individual habitually lives.'" *See United States v. Voice*, 622 F.3d 870, 874 (8th Cir.
2010) (citing 42 U.S.C. § 16911 (13)).

There was no dispute that Rock was a "sex offender" and subject to the provisions
of SORNA. *See* Crim. docket no. 47. Therefore, the main issue in the case was whether
Rock, not later than 3 business days after a change of residence, appeared in person in
Iowa to inform the Iowa authorities of a change of residence. Trial counsel filed
Defendant's Proposed Jury Instructions (Crim. docket no. 30), on July 15, 2010, which
did not contain an expanded definition of either "resides" or "habitually lives."
Defendant. Prop. Jury Instr., at 3. On July 15, 2010, the Government filed Joint Proposed
Jury Instructions (Crim. docket no. 31), providing that "[a] person 'resides' at the location
of the person's home or other place where the person habitually lives, even if the person
has no home or fixed address in that state or no home anywhere. Places where a person
'habitually lives' include places in which that person lives with some regularity, not just
the place that the person calls his home address or place of residence. A person may

reside in more than one place and must include in his registration each place where he resides. A 'change of residence' occurs whenever a person enters a state to reside there." Joint Prop. Jury Instr., at 14. The government cited to the SORNA Guidelines in support of this proposed language. The government further filed objections to Rock's proposed jury instructions, including an objection to the fact that Rock's proposed instructions did not include any attempt to further explain the term "habitually lives" or "residence." Govt. Objections, 2-3. Trial counsel filed objections to the joint proposed jury instructions, including an objection to the government's additional language regarding the definition of residence, urging that the jury should "receive only the definition set out in 42 U.S.C. § 16911(13) as "the location of the person's home or where the person habitually lives." Def. Objections at 2-3. Subsequently Trial counsel filed Defendant's Objections To Government's Instructions (Crim. docket no 44), requesting that the instructions state that "[a] person 'resides' at the location of the person's home or other place where the person habitually lives. However, the defendant cannot be found guilty of failing to register as required by federal law unless he resided in Iowa for at least three days without registering." Def. Objections to Govt. Inst., at 1. Rock again objected to the expanded definitions of residence on the basis that it could lead a jury to add up three non-consecutive days to determine that Rock had a change in residence. Def. Objections to Govt. Inst., at 2.

> The final instructions, given to the jury stated, in relevant part, as follows:
>
> "A person 'resides' at the location of the person's home or other place where the person habitually lives, even if the person has no home or fixed address in that state or no home anywhere. Places where a person 'habitually lives' include places in which that person lives with some regularity, not just

> the place that the person calls his home address or place of residence. A person may reside in more than one place and must include in his registration each place where he resides. A 'change of residence' occurs whenever a person enters a state to reside there. However, the defendant cannot be found guilty of failing to register as required by federal law unless he resided in Iowa for at least three days without registering. There is no requirement that the three days be consecutive."

Instructions to the Jury, No.3.

It is clear from the proposed jury instructions, objections, and the final jury instructions that the court considered whether to provide definitions of "resides" and "habitually lives" in the final instructions to the jury. At the time of Rock's trial, the SORNA Guidelines explained:

> "Sex offenders who lack fixed abodes are nevertheless required to register in the jurisdictions in which they reside…Such sex offenders cannot provide [a] residence address … because they have no definite 'address' at which they live. Nevertheless, some more or less specific description should normally be obtainable concerning the place or places where such a sex offender habitually lives-e.g. information about a certain part of a city that is the sex offender's habitual locale, a park or spot on the street (or a number of such places) where the sex offender stations himself during the day or sleeps at night, shelters among which the sex offender circulates, or places in public buildings, restaurants, libraries, or other establishments that the sex offender frequents."

73 Fed.Reg. 38,030, 38,055 (July 2, 2008).

Further, the SORNA Guidelines recognize that sex offenders may reside somewhere without having a definite residence address, and that for such cases, the Guidelines afford necessary flexibility by providing that, jurisdictions are to obtain information concerning

17

such transient residence with whatever definiteness is possible under the circumstances. *See* SORNA Guidelines, 73 Fed. Reg., 38, 030, 38, 043 (July 2, 2008).

As now noted by Rock, the SORNA Guidelines define "habitually lives" as "any place in which the sex offender lives for at least 30 days." SORNA Guidelines, 73 Fed Reg 38,030, 38,062. However, the SORNA Guidelines also state that "[a]s to the timing of registration based on changes of residence, the understanding of 'habitually lives' to mean living in a place for at least 30 days does not mean that the registration of a sex offender who enters a jurisdiction to reside may be delayed until after he has lived in the jurisdiction for 30 days." SORNA Guidelines, 73 Fed. Reg at 38,062.

At the time of Rock's trial, neither the United States Court of Appeals for the Eighth Circuit, nor the Supreme Court had decided whether the terms "reside" and "habitually lives" required further explanation in jury instructions given in cases based on a failure to register after a change in residence. Given any lack of contrary governing authority, and the above detailed discussion of the SORNA Guidelines, I cannot say that the failure of Rock's trial counsel to request a jury instruction in accordance with Rock's current arguments in support of his § 2255 motion, rendered his performance objectively unreasonable. *See Strickland,* 466 U.S. at 688, 104 S. Ct. 2052 (To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness.").

Because Rock has not established deficient performance, I do not need to consider whether he suffered prejudice, and his claim of ineffective assistance, based on his trial counsel's failure to request his now proposed jury instructions, fails. *See United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003) (if the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim.)

18

### 3. *Failure to use transcripts to impeach*

Rock asserts, by counsel, that his trial counsel provided ineffective assistance by failing to "properly prepare for trial by failing to secure the transcript of the state court trial" for purposes of impeaching the government's star witness." Brief at 12. Respondent claims that failure to obtain the state trial transcripts was not ineffective assistance of counsel because the witness was adequately impeached by trial counsel without the need to refer to the state trial transcripts. Response at 8.

Courts "generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *United States v. Orr*, 636 F.3d 944, 952 (8th Cir. 2011). "[F]ailure to impeach a witness constitutes ineffective assistance when there is a reasonable probability that, absent counsel's failure, the jury would have had reasonable doubt of defendant's guilt." *Id.* Failure to use evidence for purposes of impeachment that would have been merely cumulative of evidence already elicited at trial is not prejudicial. *Hall v. Luebbers*, 296 F.3d 685, 694 (8th Cir. 2002) (failure to use medical records as impeachment evidence at trial was not ineffective where it would have been merely cumulative of evidence elicited at trial).

Rock argues that the testimony of the government's main witness at Rock's federal trial differed from his testimony at Rock's state trial on the same issue. Brief at 12. At the state trial, the witness testified that the "bed list" for the shelter at which Rock had been sleeping indicated that Rock spent the nights of July 16, 17, 18, 19, 21 and 22, but that, at the federal trial, the witness added the night of July 15th. Brief at 12. Rock also asserts that the same witness testified at the federal trial that Rock received mail at the shelter after Rock was banned from the premises; however, at the state trial the witness testified that he did not recall if the mail was received one, two, or even three weeks after Rock was banned. Brief at 13. Rock argues that these two discrepancies would have

19

called into question the credibility of the witness and would have "defused what [sic] ever probative value it had." Brief at 13.

Respondent asserts that Rock's trial counsel was able to effectively impeach the main witness regarding the dates that Rock stayed at the shelter by establishing that although the witness testified that Rock was allowed to stay overnight on July 15th at the federal trial and not at the state trial, trial counsel was able to get the witness to acknowledge that he did not have personal knowledge of Rock's presence at the shelter on that night because he was not personally present. Response at 8-9. Further, respondent claims that Rock's trial counsel did not need to obtain the trial transcripts from the state trial because he had represented Rock on the state charge and had deposed the witnesses so that he was very familiar with their testimony. Response at 9.

SORNA requires an individual to keep their registration current by, "not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry." 42 U.S.C. § 16913(c). The witness's state and federal trial testimony were consistent in that he testified that he was personally aware that Rock was on the shelter's bed list July 16, 17, 18, 19 and 21, of 2009. State Tr. Tran. at 8 and Fed. Tr. Trans. at 21-22, 24. Since the witness acknowledged at the federal trial that he could not be certain about the night of July 15th, I cannot find that anything in the state trial transcript would further discredit this witness's credibility and lead to a not guilty verdict.

While the witness testified at the state trial that he only remembered that mail arrived for Rock at the shelter "after he was no longer staying there," but couldn't remember if it was one, two, or three weeks after he had been staying there, he testified at the federal trial that Rock received mail at the shelter two weeks after he left. State Tr.

20

Trans. at 19; Fed. Tr. Trans. at 32. Because the witness simply said that he could not recall exactly when Rock received mail at the shelter, that it could have been one, two, or three weeks after Rock was no longer at the shelter, later testimony that Rock first received mail at the shelter "approximately two weeks after he left," is not inconsistent with the witness's testimony at the state trial.

Producing the state trial transcripts to impeach this witness would have been merely cumulative of the testimony already solicited on cross-examination by Rock's trial counsel without use of the transcripts. Therefore, Rock has not shown that his trial counsel performed deficiently. *See Hall v. Luebbers*, 296 F.3d 685, 694 (8th Cir. 2002) (failure to use medical records as impeachment evidence at trial was not ineffective where it would have been merely cumulative of evidence elicited at trial.).

Further, Rock has not established that his trial counsel provided ineffective assistance by failing to obtain the state trial transcripts because he has not established there is a reasonable probability that, absent counsel's failure, the jury would have had reasonable doubt of defendant's guilt. *See United States v. Orr*, 636 F.3d 944, 952 (8th Cir. 2011).

Rock has not established either that his trial counsel performed deficiently or that he was prejudiced by his trial counsel's failure to obtain the transcript from the state court proceedings for purposes of impeachment. Therefore, his claim, on this ground, fails.

### 4.    *Failure to argue lack of notice*

Rock, by counsel, argues that his trial counsel provided ineffective assistance by failing to argue that Rock "could not have complied with SORNA because Iowa had not implemented a SORNA compliant program," and that Rock's conviction was a violation of due process because he did not have notice of SORNA's three day period within which to register after a change of residence. Brief at 14. Respondent asserts that "[n]othing in

21

SORNA's statutory scheme indicates that an individual's registration obligations are contingent upon a state's implementation of SORNA's administrative requirements." Response at 9. The respondent claims, further, that "it is not required that the defendant receive specific notice of his duties under federal law." Response at 10.

On April 28, 2009, prior to Rock's trial, the Eighth Circuit Court of Appeals foreclosed these arguments by holding that "notice to a sex offender of his duty under the SORNA to meet pre-existing state registration requirements is sufficient to comport with the requirements of the Due Process Clause, even if the state has not yet incorporated the SORNA's requirements." *United States v. Baccam*, 562 F.3d 1197, 1199 (8th Cir. 2009).

Failing to raise meritless arguments does not constitute deficient performance. *See Thai v. Mapes*, 412 F.3d 970, 978 (8th cir. 2005). I do not find that Rock's trial counsel's failure to raise issues of notification of the provisions of SORNA was objectively unreasonable. *See Strickland,* 466 U.S. at 688 (To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness").

Because Rock has not established deficient performance, I do not need to consider whether he suffered prejudice, and his claim of ineffective assistance, on this ground, fails. *See United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003) (if the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim.)

## D. *Certificate Of Appealability*

Denial of Rock's § 2255 Motion raises the question of whether or not he should be issued a certificate of appealability for his claims therein. The requirement of a certificate

of appealability is set out in 28 U.S.C. § 2253(c)(1), which provides, in pertinent part, as follows:

> **(c)(1)** Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> * * *
>
> **(B)** the final order in a proceeding under section 2255.

28 U.S.C. § 2253(c)(1)(B); *accord* FED. R. APP. P. 22(b). To obtain a certificate of appealability on claims for § 2255 relief, a defendant must make "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Moreover, the United States Supreme Court reiterated in *Miller-El* that "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. Ct. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

I find that Rock has not made a substantial showing of the denial of a constitutional right on his § 2255 claims. *See* 28 U.S.C. § 2253(c)(2). Specifically, there is no showing

23

that reasonable jurists would find my assessment of Rock's claims debatable or wrong, *Miller-El*, 537 U.S. at 338; *Cox*, 133 F.3d at 569, or that any court would resolve those issues differently. *Cox*, 133 F.3d at 569. Therefore, Rock does not make the requisite showing to satisfy § 2253(c) on his claims for relief, and no certificate of appealability will issue in this case. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b).

## III. CONCLUSION

Upon the foregoing, Rock's Motion Under 28 U.S.C. § 2255 (Civ. docket no. 3), is **denied in its entirety**. This matter is **dismissed in its entirety**. No certificate of appealability will issue for any claim or contention in this case.

**IT IS SO ORDERED.**

**DATED** this 19th day of March, 2013.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA